UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


ALFRED R. SIMONE                          :
                                          :
          v.                              :          C.A. No. 11-542S
                                          :
MICHAEL J. ASTRUE                         :
Commissioner of the Social Security       :
Administration                            :


## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge


This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"),

42 U.S.C. § 405(g).  Plaintiff filed his Complaint on November 15, 2011 seeking to reverse the

decision of the Commissioner.  On June 11, 2012, Plaintiff filed a Motion to Reverse Without,

or, Alternatively, with a Remand for a Rehearing of the Commissioner's Final Decision.

(Document No. 9).  On August 17, 2012, the Commissioner filed a Motion for an Order Affirming

the Decision of the Commissioner.  (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the

parties' submissions and independent legal research, I find that there is not substantial evidence

in this record to support the Commissioner's decision and findings that Plaintiff is not disabled

within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse Without, or, Alternatively, with a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB on February 18, 2009 (Tr. 121-123) and for SSI on April 15, 2009 (Tr. 124-131) alleging disability since August 19, 2002.  The applications were denied initially on June 26, 2009 (Tr. 58-63) and on reconsideration on January 26, 2010.  (Tr. 67-72).  On February 16, 2010, Plaintiff requested an administrative hearing.  (Tr. 74).  On March 1, 2011, a hearing was held before Administrative Law Judge Hugh Atkins (the "ALJ") at which time Plaintiff, represented by counsel, a vocational expert ("VE") and a medical expert ("ME") appeared and testified.  (Tr. 24-53).  The ALJ issued an unfavorable decision to Plaintiff on March 16, 2011.  (Tr. 9-23).  The Appeals Council denied Plaintiff's Request for Review on September 16, 2011, therefore the ALJ's decision became final.  (Tr. 1-8).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ improperly rejected a treating source medical opinion merely because it had an illegible signature, did not properly evaluate the degree of his limitation as to social functioning, and failed to inquire about the consistency of the VE's testimony with the Dictionary of Occupational Titles as required by SSR 00-4p.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's RFC finding is supported by substantial evidence and that any errors claimed by Plaintiff regarding the rejected medical opinion or SSR 00-4p inquiry are harmless on this record.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per

curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).   Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.   Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.   Seavey, 276 F.3d at 8.   To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.   Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.   Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).   After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.   Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

> showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,  1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step

five. <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").

Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about

his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony

requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-five years old on the date of the ALJ's decision.  (Tr. 121).  He completed the ninth grade and attended trade and technical school to become an oil burner technician.  (Tr. 28, 50).  Plaintiff worked in the relevant past as a stocker, packer, machine operator and oil burner technician.  (Tr. 144, 156, 174).  Plaintiff alleges disability due to lower- and middle-back pain and neck pain caused by a work injury in August 2002 and various mental health disorders.  (Tr. 143).

Plaintiff injured his back, resulting in a herniated disc at L4-L5 with minimal indentation on the ventral surface.  (Tr. 219-220, 267, 354).  He underwent a laminectomy on September 14, 2004.  (See Tr. 271).  On December 8, 2004, Dr. William F. Brennan assessed Plaintiff as stable and improving, with mild tenderness, and no numbness, tingling or weakness.  (Tr. 268).  He instructed Plaintiff to perform activity as tolerated, with restrictions for work including no

repetitive bending or twisting, and no lifting greater than twenty pounds.  Id.  On September 12, 2005, Dr. Brennan found Plaintiff to have mild tenderness, no spasm or swelling and negative straight leg raise.  (Tr. 321).  X-rays showed minimal spondylosis and no acute abnormality of the lumbar spine.  Dr. Brennan opined that Plaintiff was "capable of a lighter duty position at this point."  Id.  By November 21, 2005, Dr. Brennan reported that Plaintiff was essentially asymptomatic, and had "no real restrictions at this point."  (Tr. 319).  On January 18, 2006, Dr. Brennan noted that Plaintiff was doing well, with no real back or leg pain.  (Tr. 328).  He reported that Plaintiff was lifting up to eighty pounds as part of his physical therapy treatment.  He stated that Plaintiff could return to work.  Id.  On July 27, 2006, Dr. Brennan noted that Plaintiff was doing well, was neurovascular intact, took no medication, and had only occasional lower back pain.  (Tr. 326).  Examination revealed a nonantalgic gait with normal heel-toe progression, a negative straight leg raise, and no pain with hip, knee or ankle motion.  Dr. Brennan restricted Plaintiff to lifting no more than fifty pounds.  Id.

With regard to Plaintiff's left hand impairment, the medical record indicates that in September 2003, Plaintiff presented to Wickford Junction Medical Walk-in Center with complaints of numbness and pain during the previous six to nine months.  (Tr. 342).  Physical examination was normal, and an EMG did not show any evidence of carpal tunnel or radiculopathy in the left arm.  (Tr. 343).  Plaintiff did not pursue additional treatment.  Id.  On August 19, 2008, Plaintiff presented for treatment after he injured his left hand suffering a crush injury while lifting a freezer.  (Tr. 413).  An x-ray revealed that he had fractured his fourth and fifth metacarpals.  Id.  In September 2008, Plaintiff underwent open reduction and internal

fixation without complications.  (Tr. 407).  On October 16, 2008, Dr. Vaughn G. Gooding reported that Plaintiff appeared stable.  (Tr. 406).  On October 30, 2008, Dr. Gooding asked Plaintiff to increase his activity.  (Tr. 405).

On November 24, 2009, Plaintiff underwent a consultative physical examination by Dr. Okosun Edoro.  (Tr. 473-476).  Dr. Edoro found Plaintiff to have mild limitation of movement of the back, mild tenderness in and movement of the left wrist, and mildly reduced strength in the left hand and no other abnormalities.  (Tr. 475-476).  Dr. Edoro noted that Plaintiff had more calluses on his left palm than on his right palm.  Id.

Treating physician Dr. Robert Capalbo's diagnostic findings from 2009 and 2010 indicate essentially normal physical examinations.  (Tr. 515, 519-520).

With regard to Plaintiff's mental impairments, the record indicates that Plaintiff presented to South County Hospital on March 6, 2004, due to paranoia and suicidal ideation.  (Tr. 236-258).  He was given Ativan which helped.  (Tr. 237).  He was admitted to Butler Hospital from March 8, 2004 through March 31, 2004 due to delusional behavior with paranoia, suicidal ideation and anxiety.  (Tr. 259).  Plaintiff reported being paranoid that people were following him.  (Tr. 259, 262).  Plaintiff was stabilized by March 19, 2004, with psychopharmacological medication and transferred to a day program.  Id.  Upon discharge, Plaintiff had a global assessment of functioning of 60 to 65 (Tr. 260) indicating mild symptoms.  He was fully oriented, cooperative, and alert with normal speech and motor control.  He reported no paranoia, suicidal ideation or significant anxiety.  Id.

Thereafter, Plaintiff was followed by South County Wellness Group primarily for medication management. (Tr. 280-306). By October 25, 2004, Plaintiff was reportedly doing well. (Tr. 287). He reported that he kept busy by going for walks and was planning to look for work. Id. By January 12, 2005, Plaintiff's mood was stable. (Tr. 285).

Plaintiff next sought mental health treatment in February 2009, when he underwent an initial evaluation at Access to Psychiatry where he was assessed a GAF of 65 on intake (Tr. 488-490) indicating mild symptoms. Plaintiff received sporadic treatment for mood instability with anxiety. (Tr. 491-492).

On May 4, 2009, Plaintiff underwent a consultative mental status evaluation by Dr. Louis Turchetta, a Psychologist. (Tr. 448-451). Although Dr. Turchetta found Plaintiff to be fully oriented with no diminishment in concentration or other observable abnormalities, he opined that Plaintiff had "a moderate level of emotional discomfort," and assigned a GAF score of 52, indicating moderate limitations in functioning.

On June 15, 2009, State Agency Psychologist J. Stephen Clifford reviewed the evidence of record and opined that Plaintiff was able to understand and remember most directions, maintain attention and concentration, complete a normal eight-hour workday and relate effectively to others. (Tr. 468-471).

On September 25, 2010, Plaintiff sought treatment at Sheehan Psychotherapy Associates. (Tr. 503-507). The treatment notes indicate that Plaintiff was having trouble with a gambling addiction and had reported that he smoked marijuana daily for most of his life. Id. He received medication management and weekly therapy through November 2010 and monthly therapy

thereafter.  (Tr. 538-547).  These treatment notes report a GAF of 50 throughout this period reflecting serious symptoms and continue through to February 24, 2011.  Id.

Plaintiff sought treatment at Quality Behavioral Health on October 14, 2010.  (Tr. 498-499).  During his initial evaluation, Plaintiff reported that he was suffering from severe physical symptoms including chronic pain, tremors and slurred speech.  He also reported that he was suffering from poor attention and concentration, memory loss and anger issues.  Plaintiff also admitted that he smoked marijuana daily.  Id.  Dr. Gene Jacobs assessed Plaintiff with a GAF of 45 reflecting serious symptoms.  (Tr. 499).  Dr. Jacobs saw Plaintiff again on October 21, 2010 and October 26, 2010.  (Tr. 493-496).

### A.    The ALJ's Decision

The ALJ decided this case against Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff's chronic back pain, left hand injury, bipolar disorder and substance abuse disorder were "severe" impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (Tr. 15).  However, at Step 3, the ALJ concluded that these impairments were not, either singly or in combination, of Listing-level severity.  (Tr. 16).  As to RFC, the ALJ found that Plaintiff was capable of performing unskilled work at the light exertional level.  Id.  Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was not disabled because he was capable of making a successful adjustment to other work available in the economy.  (Tr. 22).

### B.    The ALJ Did Not Sufficiently Develop the Record

Plaintiff's primary argument is that the ALJ breached his duty to develop the record by dismissing a medical opinion solely because it was from "an unknown source with an illegible

signature." (See Tr. 20). Plaintiff contends that the opinion was important because it was from a treating psychiatrist and the ALJ made no effort to contact Plaintiff or his attorney to simply ask for the identity of the source.

Plaintiff represents that the opinion, a mental RFC assessment contained in the record as Ex. 34F, was rendered by Dr. Gene Jacobs, a treating psychiatrist with Quality Behavioral Health. (Document No. 9 at p. 10). A cursory review of Dr. Jacobs' treatment records and his unique, albeit, illegible signature on such records confirms Plaintiff's representation.

While Defendant appears to concede that the opinion was rendered by Dr. Jacobs, he argues that any error was harmless since it would have properly been rejected by the ALJ on the merits if he had reviewed it. I do not agree for the following reasons.

First, it would have taken the ALJ very little effort to figure out who rendered the March 2011 opinion in issue. Plaintiff was represented by counsel at the ALJ hearing, and the ALJ could have asked him to identify the source at the hearing or in a post-hearing follow-up letter. The ALJ did neither. Instead of making such effort, the ALJ rejected the opinion out of hand and gave it no probative value because it was "from an unknown source with an illegible signature." (Tr. 20).

Second, since the opinion was rendered by a treating source, it should have been subject to a heightened level of review under the so-called treating physician rule. Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The

ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).  Since the ALJ rejected this treating psychiatrist opinion out of hand and made no reasonable effort to ascertain its source, there are no "good reasons" supporting the ALJ's decision to give absolutely no weight to the opinion.

Third, while a finding of harmless error is appropriate in some circumstances to avoid the burden and expense of a fruitless remand, this is not such a case.  I decline Defendant's invitation to speculate as to what level of weight the ALJ would have given to Dr. Jacobs' opinion if he had considered it and the reasons why.  Moreover, although the opinion appears to have been part of the record at the time of the ALJ hearing (Tr. 26),[1] the ME, Dr. Ruggiano – a Psychiatrist, indicted that the time span of the record he reviewed was from 2003 to December 2010.  (Tr. 40).  Since the opinion of Dr. Jacobs in question is dated March 2011, it was not considered by the ME. Further, while both the ME, in his testimony, and the ALJ, in his decision, briefly touch on Dr. Jacobs' treatment records, neither provides any analysis or expresses any conclusions as to the import of such records.  Finally, in support of his non-disability decision, the ALJ points out that "no treating or examining source has imposed restrictions consistent with the [Plaintiff's]

---

[1] At the outset of the hearing, the ALJ noted that the medical section of the record consisted of exhibit numbers 1 through 34, and Dr. Jacobs' opinion is Exhibit 34.

allegations." (Tr. 21).  However, this is inaccurate since Dr. Jacobs is a treating source, and his opinion is consistent with at least some of Plaintiff's claims.

In addition to the failure to develop the record to determine the source of the March 2011 opinion, Defendant concedes that the ALJ did not inquire about the consistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT") as required by SSR 00-4p. (Document No. 12 at p. 20).  While the mere failure to pose such a question to the VE is ordinarily not enough to warrant remand, see Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264 (D. Me. June 24, 2004) ("the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the [VE's] testimony were in fact consistent with the DOT"), Defendant does not dispute Plaintiff's claim that the VE's testimony did conflict with the DOT in at least one respect.  In particular, Plaintiff asserts that the VE identified "stock clerk order filler" as a light, unskilled job, while the DOT identifies "Order Filler (any industry)" as a medium-level job and "Order Filler (clerical)" as a semi-skilled job.  (Document No. 9 at p. 13).

Plaintiff also claims that the ALJ did not adequately evaluate Dr. Turchetta's consulting opinion given to the DDS or adequately address his impaired social functioning in the RFC assessment.  Dr. Turchetta examined Plaintiff on May 4, 2009 and assessed a GAF of 52 reflecting moderate symptoms and observed that Plaintiff's "comprehension and judgment of social situations appeared to be somewhat impaired as evidenced by his history and emotional difficulties." (Tr. 450).  However, the ALJ indicated that Dr. Turchetta reported no deficits in functioning.  (Tr. 19).  In addition, as previously noted, the ALJ did not consider Dr. Jacobs'

opinion that Plaintiff was markedly limited in the area of social functioning and had a GAF of 45 reflecting serious symptoms.  (Tr. 493-499, 549).  Finally, despite finding a mild degree of social functioning, the ALJ did not pose any hypotheticals to the VE which included any limitations on social functioning.  In fact, the ALJ did not pose any hypotheticals to the VE at all and focused solely on the availability of unskilled jobs.  Further, when Plaintiff's counsel questioned the VE about the impact of Plaintiff's social limitations on his opinion, the VE asked for a hypothetical. (Tr. 51-52).  The ALJ then intervened, and the VE offered the opinion that Plaintiff would not be able to work if he had a severe limitation in social functioning.  (Tr. 52).  The VE was not asked for his opinion as to other levels of impairment of social functioning.  On remand, the ALJ should address Dr. Jacobs' opinion and more fully develop the record and evaluate the extent of Plaintiff's limitations in the area of social functioning and the impact of such limitations on his work capacity.

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse Without, or, Alternatively, with a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be GRANTED.  Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this Report and Recommendation.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv

72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 10, 2012